IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNE GRESSER, | No. C -11-06175 EDL |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION TO CHANGE VENUE** |
| v. | |
| WELLS FARGO BANK, | |
| Defendant. | |

In this putative nationwide class action brought by and on behalf of corporate bond holders, Plaintiff Anne Gresser alleges that Defendant Wells Fargo Bank violated its contractual and common law obligations as indenture trustee to a class comprised of holders of Series 3 Senior Secured Investment Debt Securities ("Series 3 Notes"). The Series 3 Notes were issued by non-party KH Funding, a Maryland corporation. Members of the putative class reside in states throughout the country. There is no dispute that venue is proper in this District, but Defendant moves to transfer this case to the District of Maryland for the convenience of witnesses pursuant to 28 U.S.C. § 1404(a). On March 27, 2012, the Court held a hearing on Defendant's motion to transfer. For the reasons stated at the hearing and in this Order, Defendant's motion to transfer is granted.

**Background**

Plaintiff Anne Gresser is a citizen of Florida. Compl. ¶ 3; Gresser Decl. ¶ 2. Plaintiff owns Series 3 Notes that, as of December 31, 2010, had a face value of over $1.26 million, including interest. Compl. ¶ 3. As a result of the conduct alleged in the complaint, Plaintiff alleges that her Series 3 Notes have lost substantially all of their value. Compl. ¶ 3.

Defendant is a national bank with its main office in Sioux City, South Dakota, and its

principal place of business in San Francisco. See <u>Nguyen v. Wells Fargo Bank</u>, 749 F. Supp. 2d 1022, 1026-28 (N.D. Cal. 2010). All of Defendant's employees who had any material responsibility for the matters alleged in the Complaint worked in Defendant's offices in Connecticut or New York City. Declaration of Julie Salovitch-Miller ¶¶ 4-8.

Defendant was the indenture trustee for the Series 3 Notes pursuant to an indenture executed between KH Funding and Defendant for the benefit of KH Funding and Defendant, and "for the equal and ratable benefit" of noteholders. Compl. ¶ 10. The Series 3 Notes were issued by non-party KH Funding pursuant to the indenture and a prospectus. Compl. ¶ 6.

**Legal Standard**

Under § 1404(a), the court has discretion to order transfer: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Determining whether an action should be transferred pursuant to § 1404(a) is a two-step process. The transferor court must first determine whether the action "might have been brought" in the transferee court, and then the court must make an "individualized, case-by-case consideration of convenience and fairness." <u>Inherent.com v. Martindale-Hubbell</u>, 420 F. Supp. 2d 1093, 1098 (N.D. Cal. 2006) (citing <u>Hatch v. Reliance Ins. Co.</u>, 758 F.2d 409, 414 (9th Cir. 1985); <u>Jones v. GNC Franchising</u>, 211 F.3d 495, 498 (9th Cir. 2000)). The burden is on the defendant to show that transfer is appropriate. See <u>Commodity Futures Trading Comm'n v. Savage</u>, 611 F.2d 270, 279 (9th Cir.1979).

As to the first prong of the § 1404(a) analysis, in determining whether an action might have been brought in the transferee district, the Court looks to 28 U.S.C. § 1391(b), which states that a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

As to the second prong of the § 1404(a) analysis, the plain language of the statute requires

2

the Court to consider at least three factors in deciding whether to transfer a claim to another court: (1) convenience of parties; (2) convenience of witnesses; and (3) in the interest of justice. Ninth Circuit precedent requires that courts also weigh the plaintiff's choice of forum. See Securities Investor Prot. Corp. v. Vigman, 764 F.2d 1309, 1317 (9th Cir.1985). In determining the convenience of the parties and witnesses and the interests of justice, a Court may consider a number of factors including:

> (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) ease of access to evidence; (5) familiarity of each forum with applicable law; (6) feasibility of consolidation of other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time of trial in each forum.

Gerin v. Aegon USA, Inc., No. C 06-5407, 2007 WL 1033472, at *4 (N.D. Cal., April 4, 2007) (citing Jones v. GNC Franchising, 211 F.3d 495, 498-99 (9th Cir. 2000)).

In the usual case, unless the balance of the § 1404(a) factors weighs heavily in favor of the defendants, "the plaintiff's choice of forum should rarely be disturbed." Securities Investor, 764 F.2d at 1317; see also Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986) ("defendant must make a strong showing . . . to warrant upsetting the plaintiff's choice of forum"). However, "[i]f the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration." Pacific Car and Foundry Co. v. Pence, 403 F.2d 949, 954 (9th Cir. 1968). Subsequent district court opinions have, however, stated the standard in the disjunctive: "The degree to which courts defer to the plaintiff's chosen venue is substantially reduced where the plaintiff's venue choice is not its residence *or* where the forum chosen lacks a significant connection to the activities alleged in the complaint." See, e.g., Fabus Corp. v. Asiana Express Corp., 2001 WL 253185, at *1 (N.D. Cal. March 5, 2001) (emphasis added); Williams v. Bowman, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001) (citing Fabus, 2001 WL 253185, at *1). However, transfer should be denied where it would "merely shift rather than eliminate the inconvenience." Decker Coal, 805 F.2d at 843.

**Discussion**

**1.     This action could have been brought in the District of Maryland**

3

Plaintiff disputes that this case could have been brought in the District of Maryland. A civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

A corporation is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. See 28 U.S.C. § 1391(c)(2) ("(2) an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question and, if a plaintiff, only in the judicial district in which it maintains its principal place of business; . . . ."). A corporation is subject to personal jurisdiction when it engages in systematic and continuous business activities within a state. See Helicopteros Nacionales de Columbia S.A. v. Hall, 466 U.S. 408, 415-16 (1984); Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 233 F.3d 1082, 1086 (9th Cir. 2000) ("A defendant whose contacts with a state are 'substantial' or 'continuous and systematic' can be haled into court in that state in any action, even if the action is unrelated to those contacts."). Here, the evidence shows that Defendant does business in Maryland and has a number of branch offices and other offices in Maryland, and that the head of Corporate Trust has his office in Maryland. Salovitch-Miller Decl. ¶ 16. Thus, because Defendant is subject to personal jurisdiction in Maryland, venue is also proper there. See Altin Havayolu Tasamaciligi Turizm Ve Tic v. Sinnarajah, 2008 WL 691851, at *3 (N.D. Cal. Mar. 12, 2008) ("Section 1391 establishes that venue of a corporation can be predicated on personal jurisdiction, but not the reverse."). Thus, venue is proper under § 1391(b)(1).

Venue is also proper in Maryland because a substantial part of the events giving rise to this lawsuit occurred there. Here, Defendant acted as indenture trustee for KH Funding, a Maryland company, and dealt with its employees in Maryland, even though Defendant's employees were located in Connecticut or Minnesota or New York City. Salovitch-Miller Decl. ¶ 8. KH Funding's

4

defaults took place in Maryland because it was a Maryland entity. Compl. ¶¶ 6, 20-29, 72. Plaintiff's complaint alleges that Defendant filed an original financing statement with the Maryland Department of Assessment and Taxation, and later failed to file a continuation statement within five years so that pursuant to Maryland law, the original financing statement lapsed. Compl. ¶¶ 46-48. Plaintiff alleges that Defendant eventually filed a second financing statement with the state of Maryland. Compl. ¶ 49. Plaintiff alleges that Defendant breached its obligation under the indenture by failing to exercise its powers under the indenture even though KH Funding had been penalized by Maryland state regulators. Compl. ¶ 74. Plaintiff also alleges that Defendant breached its obligation under the indenture by allowing the lien and security interest perfected by the first financing statement to lapse. Compl. ¶ 78. Plaintiff alternatively argues that Defendant assumed a duty of care by voluntarily undertaking to perfect a lien and security interest against KH Funding's assets for the benefit of the putative class by filing the financial statement with the state of Maryland. Compl. ¶ 79. Further, Defendant has provided evidence that the locus of the injury is in Maryland because Marylanders own 45% of the principal amount of the Series 3 Notes at issue, and by contrast, Californians own 0.3%. Salovitch-Miller Decl. ¶ 11. Plaintiff argues that Defendant has not shown that a substantial portion of its performance as indenture trustee occurred in Maryland. However, even Plaintiff's complaint places the focus of Defendant's conduct in Maryland. Further, Defendant provided evidence that the indenture agreements state that the agreements are governed by Maryland law (Salovitch-Miller Decl. ¶ 6), and that Defendant's employees (although located elsewhere) dealt with a number of employees of KH Funding located in Maryland in performing services with respect to the indenture agreement (Salovitch-Miller Decl. ¶ 9). Thus, the controversy in this case centers on Maryland.

Therefore, the first prong of the § 1404(a) analysis is satisfied because this action could have been brought in the district of Maryland.

**2.      On balance, this case will be transferred based on convenience**

      **A.      Plaintiff's choice of forum**

Unless the balance of the Section 1404(a) factors weighs heavily in favor of the defendants, "the plaintiff's choice of forum should rarely be disturbed." Securities Investors, 764 F.2d at 1317;

see also Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986) ("defendant must make a strong showing . . . to warrant upsetting the plaintiff's choice of forum"). This is especially true when a plaintiff chooses to sue in its home state. See Warfield v. Gardner, 346 F. Supp. 2d 1033, 1044 (D. Ariz. 2004) (plaintiff's choice of "home forum is to be given substantial deference"); Ravelo Monegro v. Rosa, 211 F.3d 509, 513 (9th Cir. 2000) (referring to the "strong presumption in favor of a domestic plaintiff's forum choice."); Chrysler Corp. v. Woehling, 663 F. Supp. 478, 482 (D. Del. 1987) ("This is so because the plaintiff is the founder of the suit and his choice of forum must be a 'paramount consideration' in determining a motion to transfer."). However, "when the plaintiff chooses a forum which has no connection to himself or the subject matter of the suit, and is thus not his 'home turf,' the burden on the defendant is reduced and it is easier for the defendant to show that the balance of convenience favors transfer." Id. (internal citation omitted); see also Strigliabotti v. Franklin Res., Inc., 2004 WL 2254556 *3 (N.D.Cal. Oct. 5, 2004) ("Where a plaintiff's choice of forum is a district other than one in which he resides, his choice may be given considerably less weight.").

The deference accorded to a plaintiff's chosen forum should be balanced against both the extent of a defendant's contacts with the chosen forum and a plaintiff's contacts, including those relating to a plaintiff's cause of action. See Pacific Car and Foundry Co. v. Pence, 403 F.2d 949, 954 (9th Cir.1968). "If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, [a] plaintiff's choice is only entitled to minimal consideration." Id. Further, in class actions, a plaintiff's choice of forum is often accorded less weight. See Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir.1987) ("Although great weight is generally accorded plaintiff's choice of forum ... when an individual ... represents a class, the named plaintiff's choice of forum is given less weight."). Nonetheless, even in a class action,

> [i]n judging the weight to be accorded [plaintiff's] choice of forum, consideration must be given to the extent of both [plaintiff's] and the [defendants'] contacts with the forum, including those relating to [plaintiff's] cause of action.... If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [plaintiff's] choice is entitled to only minimal consideration.

Lou, 834 F.2d at 739 (citations omitted); see also Foster v. Nationwide Mut. Ins. Co., 2007 WL 4410408, at *3 (N.D. Cal. Dec. 14, 2007) (giving no deference to a plaintiff's choice of forum in a

6

putative class action case where the operative facts did not occur within the chosen forum, the named plaintiff did not reside in the chosen forum, and there was an inference of forum shopping).

The fact that this case is a putative class action lessens the weight given to Plaintiff's choice of forum. Further, Plaintiff purports to represent a nationwide class, which does not necessarily justify filing suit in California rather than any other state. In fact, there is evidence that 45% of the Series 3 Note holders are in Maryland, as compared to 0.3% in California. Further, the evidence shows that Plaintiff had a Maryland address at least until 2010 at which she received notices regarding the securities at issue, even though Plaintiff filed a declaration stating that Florida became her primary residence in 2007. Gresser Decl. ¶ 3. She does not deny having a residence in Maryland, or explain why she had a Maryland address for these securities until 2010. In addition, the operative facts of this case appear to have taken place in Maryland and other states on the East Coast and not in California. The company that sold the notes is a Maryland entity (Compl. ¶ 5), the notes were issued in Maryland (Compl. ¶ 6), the indenture agreements are governed by Maryland law (Salovitch-Miller Decl. ¶¶ 3, 6), the defaults occurred in Maryland (Compl. ¶¶ 20-29), enforcement proceedings, discovery and criminal cases took place involving KH Funding in Maryland (Compl. ¶¶ 30-35), consent orders regarding KH Funding's conduct were entered in Maryland (Compl. ¶ 30), Defendant filed financing statements and liens in Maryland (Compl. ¶¶ 46-49), and KH Funding sued Defendant regarding its liens in Maryland (Compl. ¶¶ 50-56). Even though KH Funding is not a party to this action, and its contacts with Maryland are not relevant to the question of transfer, Defendant interacted with KH Funding and filed or delayed filing financing statements regarding it in Maryland, and the center of this controversy is not California.

Defendant has its principal place of business in San Francisco, but Defendant handled this matter in its offices in Connecticut and New York City. The location of Defendant's executive offices is insufficient to outweigh Plaintiff's lack of connections to California or to give her choice of forum great weight. Accordingly, Plaintiff's choice of forum is given little weight because this is a putative class action, because the events giving rise to this action occurred in or near Maryland, and because Plaintiff has no discernible connection with the Northern District of California.

**B.      Convenience of the parties**

7

Defendant argues that litigating in Maryland would be more convenient for Plaintiff than litigating in California because Plaintiff resides in Florida. Further, Defendant notes that there are more potential class members residing in Maryland than in California. Salovitch-Miller Decl. ¶ 11. Finally, Defendant has offices in Maryland, and the Wells Fargo office that handled the KH Funding transaction is located in New York, which is much closer to Maryland than to California. Salovitch-Miller Decl. ¶¶ 4-8, 16.

Plaintiff, however, argues that Defendant may not rely on Plaintiff's location or that of absent putative class members to support its motion. See Flint v. UGS Corp., 2007 WL 4365481 (N.D. Cal. Dec. 12, 2007). In Flint, the court stated:

> Defendant contends that because Plaintiff resides within the Central District, it would be more convenient for Plaintiff if the case was transferred there. However, Plaintiff actively chose to bring this case within the Northern District, and the Court regards that decision as an implicit rejection of Defendant's hypothesis. Defendant also argues that the Central District would be more convenient for potential class members who likely reside in that District. The putative class in this case, however, is yet to be defined and Defendant's assertion is speculative. Even if Defendant's assertion that potential class members live within the Central District was supported by the record, Defendant fails to demonstrate to the Court that these potential class members will actively participate in the case and thereby benefit from a closer courtroom. See Van Slyke v. Capital One Bank, 503 F.Supp.2d 1353, 1363 (N.D.Cal.2007). On this record, the Court declines to find the speculative location of potential class members to weigh towards transfer.

Flint, 2007 WL 4365481, at *3; cf. Foster, 2007 WL 4410408, at *3 (considering, among other things, that a transfer to Ohio would be more convenient because one of the named plaintiffs lived in Arkansas); see also Holliday v. Lifestyle Lift, Inc., 2010 WL 3910143, at *7 (N.D. Cal. Oct. 5, 2010) ("At least so far, Holliday is the only named plaintiff and it would be speculative for this Court to consider fairness and convenience to unnamed plaintiffs in as yet undetermined locations. While the Court entertains the possibility that class members might reside in districts closer to Michigan than to California, it is premature and misguided to ground a convenience decision on parties who may never need or wish to appear, or to assume the only 'convenience' factor is distance."). Defendant points out that in Holliday, the named Plaintiff lived in the Northern District of California, there was a California subclass, and class members were required by statute to opt into the class. The facts of this case are different with a named Plaintiff in Florida and most of the noteholders in Maryland. Plaintiff also points to Young v. Wells Fargo & Co., 2008 WL 5245894,

8

at *4 (N.D. Cal. Dec. 17, 2008) in which the court stated that the relevant inquiry is the convenience of the named parties. Even focusing only on the named Plaintiff, she has not explained why litigating in California is more convenient for her when she resides in Florida (a much larger geographic difference than the dispute between Northern and Southern California in Flint).

Further, when determining the convenience of corporate witnesses, a court should look at the convenience of the corporate officers responsible for the litigation. See Van Slyke v. Capital One Bank, 503 F. Supp. 2d 1353, 1363 (N.D. Cal. 2007) ("A corporation is a legal fiction and does not travel, but its corporate officer responsible for managing the litigation counts for this purpose [of determining party convenience]."). In this case, the officers involved in the dispute are located in New York City and Connecticut.

Therefore, the convenience of the parties weighs somewhat in favor of transfer.

### C. Convenience of the witnesses

The focus of this factor is on third party witnesses. See Kannar, 2009 U.S. Dist. LEXIS 35091, at *5. Defendant argues that the overwhelming majority of witnesses are located on the East Coast, in Maryland, and Connecticut and New York City. At the hearing, Defendant noted that in recent initial disclosures in this case, Plaintiff listed, among other things, two witnesses each in Maryland and Connecticut, and three witnesses in New York, and Defendant listed, among other things, six witnesses in Maryland, four witnesses in New York and three witnesses in Minnesota. Thus, it appears that most witnesses are from Maryland.

Further, Defendant's employees who negotiated and later signed the original indenture worked in Defendant's Connecticut office of Wells Fargo Bank Minnesota. Salovitch-Miller Decl. ¶ 4. Robert Reynolds was the most senior Wells Fargo employee working on this matter and he signed the original indenture. Id. Reynolds no longer works for Wells Fargo, but lives and works in Connecticut. Id. Later, responsibility for the indenture shifted to Defendant's office in New York City. Salovitch-Miller Decl. ¶ 7. Raymond Delli Colli, a Vice President who reported to Salovitch-Miller, was principally responsible for overseeing Wells Fargo's services with respect to the indentures. Id. Three other Wells Fargo employees in New York worked with Salovitch-Miller on this matter, including James Lewis, who signed the Third Supplemental Indenture and the Fourth

9

1  Supplemental Indenture. Id. There were no California employees working on this matter. Id. at ¶ 8.
2  Further, possible third party witnesses from KH Funding worked on this matter in Maryland.
3  Salovitch-Miller Decl. ¶ 9.

4  Plaintiff points out that the location of current employees of Defendant is afforded little
5  weight in the transfer analysis. See Shore to Shore Properties, LLC v. Allied World Assur., 2011
6  WL 4344177, at *3 (N.D. Cal. Sept. 15, 2011) ("Further, convenience of a litigant's employee
7  witnesses are entitled to little weight because litigants are able to compel their employees to testify
8  at trial, regardless of forum."). But even if this consideration discounts the convenience of Lewis
9  and Salovitch-Miller, Reynolds, who resides in Connecticut, is no longer employed by Defendant.

10  Plaintiff also argues that Defendant does not provide any information of the substance and
11  relevance of the witnesses' testimony so Defendant has not met its burden of showing
12  inconvenience. See, e.g., Florens Container v. Cho Yang Shipping, 245 F. Supp. 2d 1086, 1093
13  (N.D. Cal. 2002) ("The party seeking a transfer cannot rely on vague generalizations as to the
14  convenience factors. The moving party is obligated to identify the key witnesses to be called and to
15  present a generalized statement of what their testimony would include."). In Florens, however, the
16  moving party simply stated the location of their witnesses. Here, Defendant has done more than
17  that, and has provided evidence that, among other things, Reynolds negotiated and signed the
18  original indenture, and Lewis and Salovitch-Miller were responsible for the services with respect to
19  the indentures and signing the supplemental indentures. These witnesses are located nearer to
20  Maryland than to California. In addition, Plaintiff has offered no information about the convenience
21  of witnesses in this case. This factor weighs in favor of transfer.

22  **D.    Familiarity of forum with applicable law**

23  It is undisputed that the indenture agreements in this case are governed by Maryland law,
24  although the federal Trust Indenture Act, 15 U.S.C. § 77aaa, et seq., is also incorporated in those
25  documents. Compl. ¶ 11; Salovitch-Miller Decl. ¶¶ 3, 6. ". . . [I]t has long been recognized that:
26  'There is an appropriateness . . . in having the trial of a diversity case in a forum that is at home with
27  the state law that must govern the case, rather than having a court in some other forum untangle
28  problems in conflict of laws, and in law foreign to itself.'" Van Dusen v. Barrack, 376 U.S. 612,

10

1  645 (1964) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947)).  Thus, this factor favors
2  transfer.
3       Plaintiff's argument to the contrary are not persuasive.  Plaintiff argues that this Court is
4  competent to apply Maryland law because this is a breach of contract and negligence case that will
5  not require the Court to "untangle problems in conflict of laws."  See Van Dusen, 376 U.S. at 645
6  ("If, on the other hand, Pennsylvania courts would apply the Massachusetts Death Act in its entirety,
7  these same factors might well weight quite differently.").  Further, Plaintiff points out that the Court
8  has found that application of non-California common law is a neutral factor in the transfer analysis.
9  Zhejiang Ouhai Int'l Trade Corp. v. S. Cal. Valve Equip. Co., 2009 WL 4981144, at *5 (N.D. Cal.
10 Dec. 16, 2009) ("SVC next argues that Texas law should control the issues in the case because the
11 contracts and purchase orders were negotiated in Texas, drafted and modified in Texas, and payment
12 was delivered through Texas, and this also supports transfer. Plaintiff does not dispute this point,
13 and the Complaint relies on general common law without specifying a state law. However, because
14 the claims and counterclaims are fairly standard common law, breach of contract type claims and
15 there is likely to be very little difference between the law of Texas and the law of California, either
16 Texas or California courts are equipped to rule on the claims under either law. Therefore this factor
17 is neutral.").  In Zhejiang, however, there was no choice of law specified in a contract, and the issues
18 were standard breach of contract claims.  Although the Court is competent to apply another state's
19 law, and the claims in this case are for breach of contract and negligence, which do not specify state
20 law, the indenture agreements at issue specify Maryland law, which weighs in favor of transfer.  See
21 Bomantie Corp. v. Newlook Int'l Inc., 2008 WL 1767307, at *10 (E.D. Cal. Apr. 16, 2008) ("The
22 Distributor Agreement provides for the application of Utah law, which weighs in favor a Utah
23 forum, however, only slightly in favor as this dispute is a simple contract law action and not a
24 complicated area of Utah law."); Owner-Operator Indep. Drivers Ass'n v. C.R. England, Inc., 2002
25 WL 32831640, at *5 (E.D. Cal. Aug. 19. 2002) ("It is undisputed that the arbitration clauses are
26 controlled by Utah law. The court concludes that while all federal district courts are equally
27 equipped to resolve claims brought pursuant to the federal Truth–In–Leasing Regulations, the
28 United States District Court for the District of Utah is particularly well equipped to resolve the

11

1 issues in this case controlled by Utah law."). On balance, this factor weighs slightly in favor of
2 transfer because the indenture agreements are governed by Maryland law.

### E. Ease of access to evidence

Defendant argues that ease of access to proof favors transfer to Maryland because the relevant documentary evidence is located in Maryland and New York, and no documents are kept in California. Salovitch-Miller Decl. ¶ 8. Given the ability to access documents electronically, however, this factor is neutral. See Natural Wellness Centers of America, Inc. v. J.R. Andorin Inc., 2012 WL 216578, at *12 (N.D. Cal. Jan. 24, 2012) ("Presumably, Plaintiff's evidence is located in California and Defendant's evidence is located in New York. The parties do not contend that this is a significant factor, which is essentially neutral given the ability to electronically transfer documents or otherwise transfer documents easily.").

### F. Local Interests

#### 1. Other actions in Maryland

Defendant argues that transfer would make it easier to consolidate related claims because there are several matters already pending in Maryland: (1) KH Funding's bankruptcy case; (2) KH Funding's adversary proceeding against Wells Fargo; and (3) an action by a holder of Series 4 Notes against Wells Fargo. Ericson Decl. Ex. A, B. Defendant argues that because there is a strong policy favoring the litigation of related claims in the same district (Wyndham Assocs. v. Bintliff, 398 F.2d 614, 619 (2d Cir. 1968)), it makes sense to transfer because splitting the cases would result in duplicative discovery and proceedings. For example, according to Defendant, Plaintiff's theory of damages in this case is that Defendant unduly delayed before declaring a default as to the Series 3 Notes and caused the noteholders to lose their security interest. In the action in Maryland regarding the Series 4 Notes, Plaintiff alleges essentially the same harm. Ericson Decl. Ex. B.

Plaintiff makes persuasive arguments that Defendant's consolidation argument is overstated because the adversary proceeding was closed on May 20, 2011 (Ericson Decl. Ex. A at 22), and there is no explanation for how this litigation, that does not assert claims against KH Funding, could be consolidated with the KH Funding bankruptcy. Defendant argues that even without consolidation, it makes more sense to have these cases in the same district, citing In re Am.

12

1  Cont'l Corp/Lincoln Sav. and Loan Sec. Litig., 130 F.R.D. 475, 476 (J.P.M.L. 1990). But that case
2  was a multi-district litigation involving "the alleged liability for the highly publicized collapse of
3  American Continental Corporation (ACC) and its wholly owned subsidiary Lincoln Savings and
4  Loan Association, the largest thrift failure in United States history." Id. That case does not support
5  transfer in this case.
6  Ultimately, this factor is neutral.

### 2. Competing state interests

Maryland has a strong interest in this case; KH Funding, which sold the notes to numerous Marylanders, is a Maryland entity and over 45% of the noteholders are Marylanders. Further, Defendant notes that in November 6, 2008, KH Funding entered into a consent order with the Maryland Division of Securities as a result of an investigation into the activities of a former KH Funding Vice President (Compl. ¶ 30), and KH Funding's bankruptcy proceeding is pending in Maryland (Compl. ¶ 50).

California, however, also has an interest in this case because Defendant is a California entity with a long history here. See Mazza v. Am. Honda Motor Co., Inc., 666 F.3d 581, 594 (9th Cir. 2012) ("We recognize that California has an interest in regulating those who do business within its state boundaries, . . . ."). However, Defendant is a national banking association that does business in numerous states, all of which would have an interest in this case. Plaintiff has not shown that California's interest is stronger than any other state's, including Maryland, because the facts of this case have little connection to California. Thus, this factor is neutral.

### 3. Congestion of docket and time to trial

This factor is neutral if there are no significant differences between the forum district and the transferee district. See Evancho v. Sanofi-Aventis U.S., Inc., 2007 WL 1302985, at *4 (N.D. Cal. May 3, 2007) ("Finally, the evidence provided by both parties shows that both districts are busy; neither one will provide substantial advantages as far as court congestion."). Defendant provides evidence that in 2011, this District averaged 475 cases pending per judge and the median time from filing to trial for civil cases was 34.3 months. In Maryland, there was an average of 417 cases pending per judge and the median time to trial was 31.2 months. See Mot. at 11. The

13

differences in the workloads in this District and in Maryland are not significant. Therefore, this factor is neutral.

**Conclusion**

On balance, the convenience factors weigh in favor of transfer to Maryland. Therefore, Defendant's Motion to Transfer Venue is granted.

**IT IS SO ORDERED.**

Dated: March 29, 2012

ELIZABETH D. LAPORTE
United States Magistrate Judge